## Addleman *v.* Light & Heat Co., Appellant.

*Assumpsit—Oil and gas leases—Rentals—Fraud—Charge to jury —Erroneous charge—Construction of written instrument—Court and jury.*

1. While it is true that fraud may be shown by circumstantial evidence, it is well settled that fraud is never to be presumed but must always be proved, and the jury should not be allowed to find the existence of fraud in the absence of allegation or evidence of its existence.

2. The construction of a written contract is for the court, not the jury and it is error to leave to the jury a question involving the construction of such a contract, when there is no disputed question of fact relating thereto.

3. In an action of assumpsit to recover the amount of rental alleged to be due under an oil and gas lease, wherein it was provided that the rental, which was to be based on the pressure of gas, was to be ascertained by gauging the well in the casing in which it was completed, it appeared that a 6⅝-inch casing was in use at the completion of the well, and that thereafter an iron tubing of 3-inch diameter was run through the casing to protect it from excessive pressure. There was no charge of fraud in plaintiff's statement and nothing to indicate fraudulent act or purpose of any kind on the part of the defendant. The court instructed the jury that if the putting in of the 3-inch tubing was a fraud and intended for the purpose of taking an undue advantage, then it could not succeed, and the jury should not accept it. *Held,* that such instruction was error.

4. In such a case where there is evidence that by taking the pressure in a 3-inch tubing and using a well known mathematical formula, the practical equivalent could be obtained for the pressure in the 6⅝-inch casing, it is a question of fact for the jury whether the insertion of the 3-inch tubing inside the 6⅝-inch casing, made it impossible to ascertain, within the meaning of the contract, what the pressure was in the latter.

Argued Oct. 13, 1913. Appeal No. 78, Oct. T., 1913, by defendant, from judgment of C. P. Greene Co., Sept. T., 1905, No. 89, on verdict for plaintiff in case of J. A. Addleman v. The Manufacturers' Light and Heat Co.,

a corporation.    Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ.    Reversed.

Assumpsit to recover rental alleged to be due on a gas and oil lease.    Before INGHRAM, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,812.59 and judgment thereon.    Defendant appealed.

*Errors assigned,* among others, were those referred to in the opinion of the Supreme Court.

*A. Leo. Weil,* with him *Samuel M. Smith, Charles M. Thorp* and *Malcolm Goldsmith,* for appellant.

*James J. Purman,* with him *Frank W. Downey,* for appellee.

OPINION BY MR. JUSTICE POTTER, January 5, 1914:

On November 8, 1899, the plaintiff leased to The People's Light and Heat Company all of the oil and gas under a tract of land owned by the lessor in Morgan Township, Greene County, Pa.    The lease afterwards passed into the ownership of the defendant company. It was provided in the lease, that for any gas well producing gas in marketable quantities, a semi-annual sum was to be paid as rental to be ascertained by gauging the well every six months, in the casing in which it was completed.    If the well showed for the first minute of the gauging, a pressure of two hundred pounds or more, the rental for the ensuing six months was to be $250.00 and for less amounts of pressure, less amounts of rental in proportion, were to be paid.    As to the facts, there is but little dispute.    The controversy is as to the proper method of taking the pressure of the gas in the well. The work of drilling was begun in May, 1900, and the well was completed in the latter part of August.    A 10-inch casing was first inserted, then an 8-inch casing,

and finally a 6⅝-inch casing through which the well was drilled to completion, the flow of gas coming from a depth of 3,314 feet. The gas was allowed to blow off for some fifteen or twenty days, and defendant then ran a 3-inch iron tube through the 6⅝-inch casing to the bottom of the well. The testimony tended to show that this tubing was intended to protect the casing from excessive pressure. Packing was inserted about 160 feet from the bottom of the well, which had the effect of turning the gas into the 3-inch tube, which was closed at the top. The well was thus sealed for about three months, when it was connected with a pipe line, and the gas passed into it. After the gas was confined to the 3-inch tube, it was not, of course, possible to gauge it in the 6⅝-inch casing. Yet the testimony seems to show, and the court below in its charge says that it was not disputed, that the 6⅝-inch casing, was the casing in which the well was completed, which under the terms of the lease, was the casing in which the pressure was to be taken. But appellant, while admitting that it became impossible, after the insertion of the 3-inch tubing to take the pressure in the 6⅝-inch casing, contended that by taking the pressure in the tubing, and using a well known mathematical formula, the practical equivalent could be obtained for the pressure in the casing. So that while the operation was not performed in the larger casing, yet the plaintiff had for all practical intents and purposes, the equivalent thereof. Mr. Troutman an expert testifying in behalf of plaintiff, said that a practically, although not absolutely exact calculation might be made; while defendant's witnesses Barnes, Rankin and Sullivan, all men of knowledge and experience in the business, testified that there was a well known formula by which the pressure of gas taken in a tube or casing could be given in its equivalent as if taken in a larger or smaller tubing or casing. Under this testimony it would not seem to be of any great importance whether the pressure of the gas was actually

measured in the 6⅝-inch casing or not. The result of the measurement in the 3-inch tubing could be easily rendered into the equivalent, as it would have shown, had the measurement been made in the larger casing. It cannot therefore in any proper sense be said that the insertion of the 3-inch tubing inside the 6⅝-inch casing, made it impossible to ascertain within the meaning of the contract, what the pressure was in the latter. While this would be a question of fact for the jury, yet there is nothing in the evidence to render the matter doubtful in any practical aspect of it. As plaintiff's expert, Mr. Troutman, said, the calculations of the minute pressures of gas are only practically accurate, and this calculation of the equivalent pressure in the smaller tube, would be of the same general character.

In the third and twelfth assignments of error, complaint is made of the action of the trial judge in submitting to the jury the question of fraud, upon the part of defendant. He suggested to the jury that if defendant had put in the 3-inch tubing with an honest purpose, and if a calculation would show from the measurement made therein, what it would have been in the 6⅝-inch casing, that was a sufficient compliance with the contract. But if, however, the putting in of the tubing was a fraud, and intended for the purpose of taking an undue advantage, then it could not succeed, and the jury should not accept it. We can find nothing whatever in the evidence to justify any suggestion of fraud upon the part of defendant. No such charge is made in plaintiff's statement. That fraud is never to be presumed, but must always be proved, is so familiar a statement of the law, as to need no citation of authority. True it is that fraud may be shown by circumstantial evidence but it cannot be presumed. In the present case there is nothing to indicate fraudulent purpose or act of any kind, upon the part of the defendant. This court said in Hagy v. Poike, 160 Pa. 522: "Alleged fraud must be established either by di-

rect proof or by clearly proved facts, sufficient to warrant a presumption of its existence. It is not enough to charge fraud and prove in support thereof slight circumstances of suspicion only: Jones v. Lewis, 148 Pa. 234." But here, as we have already said, fraud was not charged, nor was anything shown which could even be regarded as a suspicious circumstance. This controversy grew out of a simple difference of opinion as to the date upon which the rental should properly begin. The difference was trifling and the exercise of a little common sense by either of the parties hereto, would have avoided the whole trouble.

The fourth assignment of error is to the affirmance of plaintiff's ninth point, which permitted the jury to find, in connection with other enumerated facts, that the agreement provided that the well was to be gauged in the 3-inch tubing. It was stipulated in the lease that the well should be "gauged in the casing in which completed." As we read the testimony of all of defendant's expert witnesses they agree that the 6⅝-inch casing was the last string of pipe through which the well was drilled, and that the 3-inch tubing was the small string of pipe put in after the well was completed. The construction of the lease was for the court and not for the jury. There was no evidence to support the ninth point, and it should have been refused.

The third, fourth and twelfth assignments of error are sustained, and the judgment is reversed, with a venire facias de novo.