## Addleman v. The Manufacturers Light & Heat Company, Appellant (No. 1).

*Leases—Oil and gas lease—Royalties—Construction—Intention.*

Where an oil and gas lease provided "such well or wells shall be gauged, in the casing in which completed, every six months," and stipulated a rental based upon the pressure of gas in the well, it was for the jury to determine, in an action for rental, whether the well was completed in the three-inch casing as contended by plaintiff or in a six and five-eighths inch casing as contended by defendant; the evidence being in conflict, a judgment on a verdict for plaintiff, based upon a special finding of the jury that the well was completed in the three-inch casing, was sustained.

Argued Oct. 2, 1916. Appeal, No. 44, Oct. T., 1916, by defendant, from judgment of C. P. Greene Co., Sept. T., 1905, No. 89, on verdict for plaintiff, in case of J. A. Addleman v. The Manufacturers Light & Heat Company, a Corporation. Before MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on a gas lease to recover royalties. Before INGHRAM, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,287.50 and judgment thereon. Defendant appealed.

*Errors assigned* were instructions to the jury.

*A. Leo Weil,* with him *S. M. Smith, C. M. Thorp* and *Malcolm Goldsmith,* for appellant.

*Frank W. Downey,* with him *James J. Purman,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, January 8, 1917:

The plaintiff leased to the defendant's predecessor in

title a tract of land for oil and gas development. The contract reserved, as rent or royalty, certain semiannual payments, according to a graduated scale, to be ascertained from a gauge of the wells at stated times. The drilling of a well was commenced in May, 1900, and gas was found in the following August. As the drilling progressed, the well was cased, first in 10-inch, then in 8-inch, then in 6⅝-inch pipe; finally a 3-inch pipe was inserted and the 8-inch and 10-inch removed. The well stood for some time without use; but, on October 6, 1910, it was gauged in the 3-inch pipe, and the defendant sent its check to the plaintiff's bank for $250, in payment of six months' rental beginning that day. Subsequently another like check was sent, both payments being based upon a gauge of the well made by the defendant in the 3-inch pipe. The defendant, however, reclaimed these payments, upon the ground that they were made by mistake. It asserted the lease in question contemplated the gauge should be taken in the 6⅝-inch pipe, and not in the 3-inch; that the well had been completed in the former, local conditions requiring the insertion of the latter for necessary protection; that by the use of an established mathematical formula, the pressure in the 3-inch pipe could be "converted into terms of pressure in the casing," or 6⅝-inch pipe; and it contended the royalties should be calculated and paid accordingly. The plaintiff refused to accede to the position of the defendant, and brought suit for the royalties as claimed by him. He secured a verdict, upon which judgment was entered; but, on appeal, this court reversed (242 Pa. 587), and granted a new venire. The second trial, which likewise resulted in a verdict and judgment for plaintiff, is now before us on the appeal of the defendant.

The lease provides that the lessee shall pay to the lessor "for any well or wells producing gas in sufficient quantities to justify the lessee marketing the same in its pipe line, a semiannual sum to be ascertained as follows: 'Such well or wells shall be gauged in the casing in which

completed, every six months, in the event the same should show for the first minute a pressure of 200 pounds or more, the rental for the next six months shall be $250; in case it should show a pressure from 150 to 200 pounds, said rental shall be $200' "; and so on down according to a graduated scale, to a minimum pressure of from 15 to 25 pounds at $25.

The plaintiff contends that the 3-inch pipe was the casing in which the well was completed, while the defendant says it was completed in the 6⅝-inch pipe. Several witnesses, experienced in oil and gas development, testified for the plaintiff that "the well was completed in a 3-inch casing or tube, whichever you call it," and that such 3-inch pipe was sometimes designated in the trade as "casing," and at other times as "tubing." These witnesses drew a distinction between the completion of the drilling and the completion of a well as a whole, and, although contradicted by testimony on the other side, their evidence was amply sufficient to sustain the special finding of the jury that "the well was completed in a 3-inch casing." It may be noted here that, in addition to the oral testimony upon the subject, the plaintiff introduced in evidence, as one of his exhibits, a "book record of the defendant company ......for the purpose of showing that the defendant company treated the well as completed in a 3-inch pipe"; and this book shows a number of entries from "4-30-04 to 1-14-05," entitled, "Record of Pressure Reports of Gas Wells," in which the well in question is designated "size of casing, 3," meaning 3-inch. This controlling issue, as to the size of the casing in which the well was completed, was plainly and correctly submitted to the jury, and we see no reason for disturbing their verdict or the judgment entered thereon.

Moreover, we see no merit in the defendant's contention that the learned judge who presided over the trial now under review departed from the law as laid down by us when the case was here before. The present trial was

conducted along lines different from those followed in the first instance. Then the testimony produced by the defendant, as to how and when the well was completed, practically stood uncontradicted, and, for that reason, we said there was no evidence to support a certain request for charge made by the plaintiff, and mentioned in our former opinion; but, on the last trial, as already pointed out, the plaintiff submitted ample evidence in this connection. In the opinion just mentioned, we also said the construction of the written contract was for the court; but as the case was last tried, no departure was made from this ruling. The learned trial judge gave proper directions on the construction of the lease; at the same time, on the issues as made, and under the evidence as produced, he was obliged to send to the jury all the questions of fact which they passed upon, among others, as to when the well was actually completed; this was materially different from showing by expert testimony the "interpretation of......the lease, as understood by men engaged in the oil and gas business," which he refused to permit the defendant to do.

The written contract did not determine when, nor designate the pipe, or casing, in which the well should be completed, and the evidence shows that the words used therein had no defined trade meaning; hence, from them alone, it was impossible for the court to decide the time or circumstances of completion, and evidence upon these points was properly admitted. If, as a matter of fact, the well had been completed in the larger pipe, instead of the smaller one, then the question of the application of the alleged mathematical formula, contended for by the defendant and largely discussed in our former opinion, would be of importance; but, under the special finding of the jury at the last trial, the rule and our former discussion thereof become entirely irrelevant.

When this case was first in court, the plaintiff made a contention that the defendant was guilty of fraud; but we ruled the evidence upon that point insufficient and

said the issue should not have been submitted to the jury. Of course, when the case was sent back for another trial, the question of fraud was out of it, and the cause was tried along new lines; this renders much that we said in our former opinion inappropriate to the facts as they were subsequently developed, and are now before us.

The plaintiff contends, and we are not convinced to the contrary, that he always depended upon and consistently urged the theory that the well was completed in the 3-inch pipe, or casing; further, that the gauge had to be taken thereon, and, when thus taken, it could not, with any degree of certainty or fairness, be applied as if taken on the larger pipe; but, so as to make clear his course of conduct at trial, the plaintiff explains that he was obliged to introduce certain evidence, unnecessary to his own theory of the case, in order to meet the defendant's adverse contentions, should they be seriously accepted by the jury. Moreover, he contends that certain requests submitted by him were put in for the same reason and purpose, and not in any sense as representing his own theory of the case. As to these matters, it is sufficient to say, although the defendant earnestly argues that the evidence and requests under discussion show the plaintiff's present position to be an inconsistent one, yet the latter's explanations are fully sustained by an examination of the record and the summary of the respective contentions contained in the painstaking and elaborate charge of the learned trial judge.

All assignments of error which call to our attention matters relevant to the points discussed in this opinion are overruled; and, owing to the views here indicated, the others become unimportant, hence they are dismissed without further discussion.

The judgment is affirmed.